UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EASTERN SAVINGS BANK, FSB,

                Plaintiff,               **MEMORANDUM OF DECISION AND ORDER**

            -against-             12-CV-1515 (ADS)(GRB)

JOHN N. MOORE, JR., JST CAPITAL, INC.,
SOUTH NASSAU COMMUNITIES
HOSPITAL and JOHN N. MOORE FUNERAL
HOME,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Kriss & Feuerstein, LLP**
*Attorneys for the Plaintiff*
360 Lexington Avenue, Suite 1300
New York, NY 10017
    By:   Jerold C. Feuerstein, Esq., Of Counsel

**Tarter, Krinsky & Drogin**
*Attorneys for the Defendants John N. Moore, Jr., and John N. Moore Funeral Home*
1350 Broadway
New York, NY 10018
    By:   Scott S. Markowitz, Esq., Of Counsel

**NO APPEARANCE:**

JST Capital, Inc.
South Nassau Communities Hospital

**SPATT, District Judge.**

On March 28, 2012, the Plaintiff Eastern Savings Bank, FSB (the "Plaintiff") commenced this action against John N. Moore, Jr. ("Moore"); JST Capital, Inc. ("JST Capital"); South Nassau Communities Hospital ("South Nassau") and John Does #1–6. Pursuant to the New York Real Property Actions and Proceedings Law ("NYRPAPL") Section 1301, et seq., the Plaintiff seeks to foreclose a mortgage upon real property located at 150 Nassau Road in

1

Roosevelt, New York (the "Subject Property"). In this regard, the Plaintiff alleges that Moore has failed to make monthly payments on a commercial loan he borrowed from the Plaintiff in the principal amount of $400,000. This loan was secured by a mortgage on the Subject Property executed on or about May 11, 2007.

On May 12, 2012, the Court "so ordered" a stipulation entered into by the Plaintiff and Moore to extend Moore's time to answer the Complaint. Thereafter, on May 17, 2012, the Plaintiff moved to amend the caption in this case so that (1) John N. Moore Funeral Home (the "Funeral Home") would be substituted in place and stead of John Doe #1 and (2) John Does #2–6 would be dismissed from the case. In addition, the Plaintiff requested a certificate of default be entered against JST Capital, South Nassau and the Funeral Home (together with Moore, the "Defendants"). On July 10, 2012, the Clerk of the Court noted the default of JST Capital, South Nassau and the Funeral Home.

Following the Court's May 12, 2012 Order extending Moore's time to answer the Complaint, Moore received further extensions of time to answer. Finally, on October 17, 2012, Moore, together with the Funeral Home, filed an Answer. In the Answer, Moore and the Funeral Home noted that the Funeral Home was improperly captioned as "John N. Moore Funeral Home," as its name is actually "John Moore Funeral Home, Inc."

An initial conference was scheduled before United States Magistrate Judge Gary R. Brown for November 26, 2012. At this conference, a settlement conference was set by Judge Brown for January 15, 2013.

During the January 15, 2013 settlement conference before Judge Brown, the parties agreed to a settlement, which was placed on the record. One month later, on February 26, 2013, the parties filed a stipulation of settlement with a dismissal without prejudice, which they had

actually signed more than a week earlier, on February 14, 2013 (the "stipulation of settlement" or "settlement agreement"). As such, on February 28, 2013, the Court closed this case subject to the terms of the settlement agreement.

Approximately eight months later, on December 13, 2013, the Plaintiff filed the present action, (1) seeking to reopen this case; (2) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(c), for an order setting aside the July 10, 2012 Certificate of Default against the Funeral Home because the Funeral Home participated in the settlement conferences before Judge Brown and signed the stipulation of settlement; and (3) for a Judgment of Foreclosure and Sale. The Plaintiff claims that Moore and the Funeral Home have defaulted in their obligations under the settlement agreement.

For the reasons that follow, the Court grants the Plaintiff's motion in its entirety. The Court notes that the request by the Plaintiff to set aside the July 10, 2012 Certificate of Default against the Funeral Home is unopposed. Accordingly, the Court grants the Plaintiff's request, particularly because, as the Plaintiff points out, the Funeral Home participated in the settlement conferences before Judge Brown and signed the settlement agreement.

## I. BACKGROUND

The Court need not restate the procedural posture of this case, which has already been recited above. Rather, the Court shall provide those facts detailing the settlement agreement and the alleged default by Moore and the Funeral Home.

In this regard, the settlement agreement entered into by the parties provided, in relevant part, that Moore would make a series of monthly payments to the Plaintiff, as follows: (1) a $15,000 payment to be made by January 31, 2013, which had been paid by Moore to the Plaintiff prior to the parties entering into the settlement agreement; (2) two $10,000 payments, one by

3

February 28, 2013, and the second by March 31, 2013; and (3) a number of $3,000 payments, commencing on April 30, 2013 and continuing on the last day of each consecutive month thereafter through and including September 30, 2013.

In addition, the parties agreed that (1) beginning on April 1, 2013 and continuing on the first day of each consecutive month until September 1, 2013, Moore and the Funeral Home would make a payment of $2,936.23 to the Plaintiff; (2) beginning on October 1, 2013 and continuing on the first day of each consecutive month until September 1, 2014, Moore and the Funeral Home would make a payment of $3,141.39 to the Plaintiff; (3) beginning on October 1, 2014 and continuing on the first day of each consecutive month until September 1, 2014, Moore would make a payment of $3,375.42 to the Plaintiff; and (4) beginning on October 1, 2014, all regular monthly payments would be made by Moore and the Funeral Home in accordance with the promissory note and mortgage associated with the commercial loan that had been executed by Moore on May 11, 2007.

Moreover, of importance, the settlement agreement stated as follows:

> If [the] Defendants [Moore and Funeral Home] default on any part of, or under any provisions of, this Stipulation, the Note or the Mortgage, including the failure to make any payment as required by the terms of the Note, Mortgage and this Stipulation, then [the] Plaintiff, after the expiration of a ten (10) day notice to cure such default (which will not be transmitted until a payment is not made 14 days after it is due), which shall be transmitted to [the] Defendants [Moore and Funeral Home] via regular mail to the [Subject] Property and to [the] Defendants' counsel at the address below, will have the right to restore this action on an ex parte basis, without opposition, to obtain a Judgment of Foreclosure and Sale. In the event of a foreclosure sale, [the] Plaintiff will send notice of the foreclosure sale to [the] Defendants [Moore and Funeral Home] via regular mail at the [Subject] Property. Moreover, upon any event of default, which remains uncured after the expiration of a ten (10) day notice to cure such default, all interest rate concessions will be void going forward and

4

> all payments shall be due and owing thereafter in strict compliance
> with the terms of the Note and Mortgage.

(Dkt. No. 35.)

According to the Plaintiff, Moore and the Funeral Home defaulted under the terms and conditions of the settlement agreement by failing to make the monthly payment that was due on July 1, 2013, as well as all the monthly payments that were due thereafter, as outlined above. On August 1, 2013, the Plaintiff's counsel sent a 10-day notice to cure to Moore and his attorney, advising Moore of the default and the period to cure, which was August 15, 2013. However, apparently, the Plaintiff then extended the period to cure by fifteen days, to August 30, 2013.

Nevertheless, despite this extension, Moore allegedly failed to cure the default, and by email dated September 10, 2013, the Plaintiff's counsel informed counsel for Moore and the Funeral Home that the default had not been cured, and thus, the Plaintiff would be proceeding to restore this case so as to obtain a Judgment of Foreclosure and Sale. At the time the Plaintiff filed the present motion, Moore and the Funeral Home had not cured the default.

For their part, Moore and the Funeral Home admit that in about August 2013, Moore began to fall behind with making payments as required by the settlement agreement because the Funeral Home's revenues fell below what they had historically been. While counsel for Moore and the Funeral Home sought to obtain relief for their clients from the settlement agreement by proposing that the period under which Moore and the Funeral Home had to make certain payments be extended, the Plaintiff's attorneys rejected the proposal and, instead, decided to make the present motion.

Despite conceding their default on their obligations under the settlement agreement, Moore and the Funeral Home nevertheless argue that this Court should use its equitable powers to prevent a foreclosure sale because to allow a foreclosure sale to go forward would result in

Moore filing for bankruptcy and would possibly destroy a family-run business. Further, to demonstrate that a foreclosure sale would be inequitable in this case, Moore and the Funeral Home point out that although the Plaintiff only loaned Moore $400,000, the Plaintiff now claims it is owed more than $800,000 due to the Plaintiff applying a twenty-four percent default interest rate. In addition, Moore and the Funeral Home encourage the Court to refer this matter back to Judge Brown for further settlement negotiations.

## II. DISCUSSION

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." Transtech Electronics Pte Ltd. v. NAS Electronis, Inc., 98 CIV. 1209 (JGK), 2000 WL 381428, at *2 (S.D.N.Y. Apr. 13, 2000) (collecting cases). In this regard "[a] stipulation for settlement is a contract, interpreted under general principles of contract law." Rochester Laborers' Pension, Welfare-S.U.B., Annuity & Apprentice & Training Funds v. Massa Const., 07-CV-6171-CJS, 2013 WL 1681777, at *4 (W.D.N.Y. Apr. 17, 2013) (quoting Coalition on West Valley Nuclear Wastes v. Bodman, 625 F. Supp. 2d 109, 120 (W.D.N.Y. 2007)) (collecting cases).

As an initial matter, the Court notes that the stipulation of settlement does not include a choice of law provision, and thus, "this Court must apply New York choice of law rules to determine what state law governs the Settlement Agreement." H & H Acquisition Corp. v. Fin. Intranet Holdings, 669 F. Supp. 2d 351, 359 n.4 (S.D.N.Y. 2009). "New York courts apply the 'center of gravity' or 'grouping of contacts' analysis in contract cases[,]" which involves considering factors such as "'the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties.'" Id. (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936, 939 (1993)). Applying

6

this approach here, the Court finds that the stipulation of settlement is governed by New York law because the underlying action was brought pursuant to the NYRPAPL; the settlement agreement was signed in New York; and Moore and the Funeral Home are New York residents. See, e.g., Internet Mgmt. Info. Sys., Inc. v. Hanes Morgan & Co., Inc., 98 CIV. 6758 (DLC), 2000 WL 193127, at *3 (S.D.N.Y. Feb. 16, 2000) (finding that New York law applied in a diversity action where the plaintiff was a New York corporation; the settlement agreement was negotiated in part and signed by plaintiff in New York; the underlying contract at issue in the litigation was negotiated in part and signed in New York; and the parties relied on New York law) (citations omitted).

"Settlement agreements are strongly favored in New York and may not be lightly cast aside. Afterthought or change of mind are not sufficient to justify rejecting a settlement." Transtech Electronics Pte Ltd., 2000 WL 381428, at *2 (quoting Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997), aff'd, 159 F.3d 1347 (2d Cir.1998)); see also H&H Acquisition Corp, 669 F. Supp. 2d at 359. Indeed, "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." BCM Development, LLC v. Oprandy, 490 F. App'x 409 (2d Cir. 2013) (summary order) (quoting Hallock v. State, 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984)).

New York law requires that courts interpret contracts "according to the parties' intent," particularly by "giv[ing] effect to the intention of the parties as expressed in the unequivocal language they have employed in the contract." Dan Dong Dong Jin Garment Co. Ltd. v. KIK Fashions Inc., 11 CIV. 2650 LBS, 2012 WL 2433530, at *1 (S.D.N.Y. June 27, 2012) (citations and internal quotation marks omitted); see also Transtech Electronics Pte Ltd., 2000 WL 381428,

7

at *2 ("The Court must construe the agreement in accordance with the intent of the parties, giving unambiguous words their plain meaning."). "In construing the agreement, the Court should also reach for fair and reasonable results." Transtech Electronics Pte Ltd., 200 WL 381428, at *2 (citing Bank of New York v. Amoco Oil Co., 35 F.3d 643, 662 (2d Cir.1994)).

As Moore and the Funeral Home concede, there is no dispute in this case that Moore and the Funeral Home have defaulted on their obligations under the stipulation of settlement. Moreover, the terms of the settlement agreement unambiguously provide that in the event of such a breach, the Plaintiff is entitled to reopen this case and obtain a judgment of foreclosure and sale of the Subject Property. In addition, Moore and the Funeral Home make no claim of the existence of any fraud, collusion, mistake or accident in connection with the stipulation of settlement.

Rather, Moore and the Funeral Home cite to one case, In re Winter, 439 F.2d 808 (2d Cir. 1971), to argue that the Court should use its equitable powers and not issue a judgment of foreclosure and sale in this case. However, In re Winter is inapposite here, as that case concerned a deficiency judgment arising out of a bankruptcy proceeding and did not involve a settlement agreement. Moreover, the contention by Moore and the Funeral Home that the Plaintiff would be required to mediate the underlying mortgage dispute if this action was in state court is erroneous, since the relevant New York statute, Civil Practice Law and Rule ("CPLR") 3408 only mandates that a settlement conference be conducted in cases involving homeowners facing foreclosure, but does not apply in cases where, as is here, the loan at issue is a commercial loan. See Independence Bank v. Valentine, 113 A.D.3d 62, 976 N.Y.S.2d 504, 505 (2d Dep't 2013) ("On this appeal, we are asked to determine whether . . . CPLR 3408[ ] mandates that a settlement conference be conducted in an action to foreclosure a mortgage on a primary

residence where the mortgage collateralizes a personal guaranty of a commercial loan to a corporation. While CPLR 3408 reflects a clear legislative intent to aid homeowners threatened with foreclosure, we hold that its protective ambit does not extend to the facts at bar, and thus no settlement conference was required in this case.").

As to the argument by Moore and the Funeral Home that the twenty-four percent default interest rate is inequitable, the Court disagrees. Courts in this Circuit have rejected challenges to similar default interest rates, because (1) New York's criminal usury statute, N.Y. Penal Law § 190.40, only voids interest rates above twenty-five percent; and (2) usury statutes do not apply to defaulted obligations. See, e.g., AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC, 890 F. Supp. 2d 373, 388 n.9 (S.D.N.Y. 2012) ("[I]t is well established that the usury statutes do not apply to defaulted obligations. Courts accordingly have upheld default interest rates that exceed twenty-five percent.") (citation and internal quotation marks omitted) (collecting cases); 1st Bridge LLC v. 682 Jamaica Ave., LLC, 08-CV-3401 NGG MDG, 2010 WL 4608326, at *4 (E.D.N.Y. July 13, 2010), report and recommendation adopted, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010) ("It is well settled that the defense of usury does not apply where the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity. Furthermore, the loan in this matter was made to a corporate defendant, and a corporation may only raise the defense of usury if the interest rate exceeds the criminal usury rate of 25%. Thus the 24% default interest rate specified by the Note does not exceed what is permissible under applicable law.") (citations, internal quotation marks and ellipse omitted).

Therefore, the Court grants the Plaintiff's motion in its entirety. The Court shall file separately a signed copy of the proposed Judgment of Foreclosure and Sale, which accompanied the Plaintiff's motion papers. See Rochester Laborers' Pension, 2013 WL 1681777, at *6

("Pursuant to the Stipulation of Settlement, Plaintiffs now move for an entry of judgment against Defendants in the amount of $52,830 .64 . . . . Here, it is undisputed that Defendants failed to make the required payments in accordance with the Stipulation, and therefore defaulted under the Stipulation of Settlement. . . . Defendants have not shown cause to invalidate the contract, or that it was legally impossible to perform under its terms. Accordingly, Plaintiffs' motion for entry of judgment is granted."); Transtech Electronics Pte Ltd., 2000 WL 381428, at *2 ("Here, the terms of the Settlement Agreement are unambiguous. Section IV of the agreement provides for judgment to be entered against the defendants should one of two events occur: the failure to make timely payment, or the failure to assign the patent rights. It is not disputed that both of these events have occurred. The plaintiffs are therefore entitled to an entry of judgment against the defendants in accordance with the plain language of the agreement.").

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that this action is reopened for the purpose of the entry of a judgment and, because the Funeral Home participated in the settlement conferences before Judge Brown and signed the settlement agreement, the July 10, 2012 Certificate of Default against the Funeral Home is set aside pursuant to Fed. R. Civ. P. 55(c); and it is further

**ORDERED** that the Plaintiff's motion for an entry of a Judgment of Foreclosure and Sale is granted; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment in accordance with the Order of Judgment of Foreclosure and Sale, also dated June 6, 2014, that is being filed in conjunction with this Order.

**SO ORDERED.**

Dated: Central Islip, New York
June 6, 2014

                                                */s/ Arthur D. Spatt*
                                            ARTHUR D. SPATT
                                       United States District Judge